**In re AKRON, CANTON & YOUNGSTOWN RY. CO.**

**RAILWAY CREDIT CORPORATION v. HAGENBUCH et al.**

No. 8524.

Circuit Court of Appeals, Sixth Circuit.

Feb. 13, 1941.

W. H. Bemis, of Cleveland, Ohio (D. Willard, Jr., of Baltimore, Md., E. G. Buckland, of New Haven, Conn., and Baker, Hostetler & Patterson, of Cleveland, Ohio, on the brief), for appellant.

Andrew P. Martin, of Cleveland, Ohio (Squire, Sanders & Dempsey, of Cleveland, Ohio, on the brief), for trustees-appellees.

George C. Sharp, of New York City (Sullivan & Cromwell, of New York City, on the brief), for appellee Bondholders' Committee of Akron, C. & Y. Ry. Co.

Shelton Pitney, of Newark, N. J. (Pitney, Hardin & Skinner, of Newark, N. J., on the brief), for appellees Bondholders' Committee for Northern O. Ry. Co.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

HICKS, Circuit Judge.

Pursuant to Section 77 of the Bankruptcy Act, 11 U.S.C.A. Section 205, sub. s of which makes it applicable to actions commenced under an earlier Act, the Interstate Commerce Commission on August 12, 1938, reported a plan of reorganization for the Akron, Canton & Youngstown Railway Company, debtor (herein called Akron), and the Northern Ohio Railway Company, intervening debtor (herein called Northern) ; and issued an order approving the plan, subject to confirmation by the court. The plan was referred to a Special Master who after extended hearings recommended its approval. The appeal is from an order entered October 30, 1939, confirming the report of the Master and approving the plan.

By stipulation filed after the hearing here, which we approve, the appeal is restricted to that part of the order which approved an allowance of a claim against Akron in favor of New York, Chicago & St.

Louis Railroad Company for alleged damages resulting from a guaranty by its subsidiary, the Lake Erie & Western Railway Company, of $2,500,000 of the first mortgage bonds of Northern. Claimant N. Y., C. & St. L. Railroad and its subsidiary, Lake Erie & Western, are herein referred to interchangeably as the guarantor.

Northern was organized in 1895 for the purpose of acquiring 161.73 miles of railroad between Main Street in Akron, Ohio, westwardly to Delphos, Ohio, and executed a first mortgage upon all the property acquired to secure its issue of $2,500,000 5% first mortgage bonds payable October 1, 1945. On the same day it leased the property for 999 years to the guarantor, the latter agreeing to, and did, indorse its guaranty of the principal and interest upon each of the Northern bonds, using the following words:

"For value received, The Lake Erie & Western Railroad Company hereby guarantees the punctual payment of the principal of the within bond at its maturity, and of the interest coupons hereto attached as they consecutively become due in accordance with the terms, tenor and conditions thereof.

> "The Lake Erie and Western Railroad Company
> "By L. M. Schwan,
> "V. President."

Akron was organized in 1907 and constructed and acquired 9.58 miles of road from Main Street in Akron eastwardly to Magadore. In 1919 it acquired the outstanding common stock of Northern and the Northern lease from the guarantor and became the lessee. By the terms of the agreement with the guarantor, consented to and signed by Northern, Akron assumed "all of the obligations and liability of the Lake Erie Company upon its guaranty of the outstanding first mortgage bonds, principal and interest, of the Ohio Company" (Northern) "from and in respect to which, and all loss, cost and expense by reason thereof, the Akron Company covenants and agrees with the Lake Erie Company to hold it harmless; * * *" (§ 4(b) of the assignment agreement).

Thus, Northern bondholders might look, first, to Northern for the payment of their bonds, then to the guarantor, by virtue of the guaranty written upon the bonds. If the guarantor paid out anything on the bonds, it would normally be subrogated to any security held by the bondholders and in addition could look to Akron on the latter's covenant to save it harmless.

On April 3, 1933, Akron and Northern, severally filed petitions for reorganization, Northern petitioning that it be allowed to effect a plan "in connection with or as a part of the plan of reorganization of" Akron. Trustees were appointed. It is unnecessary to go into the details of the plans of reorganization proposed by the debtors and the trustees, nor into the lengthy hearings held by the Interstate Commerce Commission upon those plans. It is the Commission's plan, confirmed by the court, which contained the allowance now complained of.

The plan provided: That the debtors should be consolidated into a new corporation and that the lease of Northern's property by Akron and all liabilities to each other should be cancelled. The capitalization of the new company was fixed at $8,500,000, a reduction of about $10,000,000 from the total of the combined assets of the two companies, as shown by their last balance sheets; and a reduction of approximately $5,500,000 below the figure of $13,982,391 which the Commission considered capitalizable assets. The $8,500,000 was distributed in obligations of the new company as follows:

"Undisturbed

| | |
|---|---|
| Trustees' Certificates, 4 percent | $ 266,000 |
| Equipment trust of 1926, 4½ percent | 40,000 |
| Equipment lease of 1936, 4 percent | 18,500 |
| New Issues | |
| Consolidated mortgage bonds, 4 percent, series A | 1,500,000 |
| Consolidated mortgage bonds, 4½ percent, series B | 2,173,000 |
| Preferred stock | 2,203,800 |
| Common stock issued and outstanding | 1,614,900 |
| Common stock, issued and held in treasury | 683,700 |
| Total | $8,500,000" |

The last item, "Common stock issued and held in the treasury" incorporated the proposed allowance to the guarantor and is the one objected to here.

Some of the other items however throw light on this allowance. The first mortgage bonds of Northern with unpaid in-

terest aggregated $3,000,000. The series A bonds of $1,500,000 under the heading "New Bonds" went to the old Northern bondholders, along with preferred and common stock aggregating $1,500,000. Thus, they received new bonds and stock whose face value equalled the face of the old bonds and unpaid interest which were the subject of the guaranty. Similarly, Akron bondholdings with interest aggregating $4,346,000 were paid half by bonds, and half by preferred and common stock.

The Commission's order setting up these allocations read: "Holders of such bonds and coupons presenting them for the new securities shall upon request, receive back the old bonds and coupons presented appropriately stamped to show the new securities issued in respect thereof shall have been delivered." This provision was made, that the Northern bondholders might have the old bonds as evidence of their right against the guarantor.

Northern second mortgage bondholders received nothing. Akron common stockholders received warrants entitling them to common stock under certain contingencies.

General creditors, exclusive of a few holding small items ordered paid in cash, were the appellant, $194,961.40; the Cleveland Trust Co., $252,944.06; and the Guardian Trust Co., $191,452.54. The guarantor was considered a general creditor for $3,000,000 upon Akron's covenant to hold it harmless.

Available to pay the total of $3,619,358 of general claims was $829,410 of common stock remaining after the other allocations we have described, and representing 22.79% of the general claims. Common stock of the face value of 22.79% was therefore ordered distributed to appellant and the banks along with warrants entitling them to additional common stock up to 100% of the face of their claims out of any stock not distributed to the guarantor.

The balance of the common stock amounting to $683,790, and being 22.79% of the guarantor's contingent claim against Akron was ordered issued and held in the treasury. Under the plan the guarantor was also contingently entitled to warrants which might, under certain circumstances not material here, be exchangeable for common stock. As to the distribution to the guarantor, the Commission's order read,

" * * * The New York, Chicago and St. Louis Railroad Company, upon presentation to the treasurer of the new company of appropriate proof of loss sustained in the performance of its contract of guaranty of bonds of the intervening debtor, shall receive of the new company stock issued in reorganization and held in treasury, for each $100 of loss so provided, $22.79 par value of new common stock; and shall participate equally and ratably with the holders of Class A warrants in any distribution of stock pursuant thereto, each $100 of proved loss entitling New York, Chicago and St. Louis Railroad Company to participate in the distribution to the same extent as one Class A warrant."

This allowance to the guarantor carries with it the rejection (1) of Akron's executory covenant to save it harmless and (2) of any obligation of Northern to the guarantor by way of subrogation. This fact appears from the use of the word "recompense" in the following portion of Clause B of the Commission's order, "Appropriate securities of the new company as hereinafter noted, consistent with the other provisions of the plan, with which to *recompense* the New York, Chicago and St. Louis Railroad Company for the debtor's and the intervening debtor's liability to it for amounts expended in the performance of its guaranty of the first mortgage bonds of the intervening debtor, shall be issued and held in treasury;" (Italics ours).

It appears therefore that the guarantor is still contingently liable upon its guaranty to the Northern bondholders, even though all rights to their security by way of subrogation or otherwise were abrogated under the plan; and, for any outlays it may make, is relegated along with other general creditors, to a fractional interest in the common stock of the new company.

■ After the hearing here, counsel for appellant and appellee, trustees, addressed certain letters and memoranda to the court purporting to show that the guarantor had "entered into an agreement with the holders of $2,184,000.00 face amount of Northern bonds for the settlement of their claims, and has further agreed that it would disavow any interest under the existing Plan of reorganization based upon consideration paid or agreed to be paid to accepting bondholders under its said settlement agreement"; thus releasing such large additional amounts of common stock to other general creditors, that appellant would receive in stock the substantial face amount of its allowed claim; and the question arises wheth-

er the controversy on the appeal has not therefore become moot.

We do not think that it has become altogether moot. We are of the opinion that appellant retains a substantial interest in the controversy. Assuming the release by the guarantor of any claim for outlays upon $2,184,000 of Northern bonds, and the release of common stock representing 22.79% of the face amount of the settlement to appellant and other general creditors, the latter would still be in possession of warrants for approximately 18.50% of the face amount of their allowed claims. In the case of appellant this would be, roughly, $35,000, which is, intrinsically, substantial.

This brings us to the question, whether the guarantor should participate as a general creditor in the plan since its guaranty was not performed and since no determination of damage, resulting to it from the rejection of the covenant to save it harmless, had been made.

We think that the guarantor must be "deemed" to be a creditor of Akron to the extent of its actual damage or injury, to be "determined in accordance with principles obtaining in equity proceedings." See Section 77 sub. b of the statute. And the provision of the plan hereinabove quoted for the determination of the fixed amount, if any, of the claim of the guarantor is consistent with the general provisions thereof. It gave strength to the plan and was approved by the District Judge. See Section 77 sub. f.

The objection is made that the amount of loss, if any, sustained by the guarantor upon the performance of its contract is to be determined solely by the treasurer of the reorganized company.

We do not so read the provision. The treasurer is not set up as a judicial tribunal. He is not required to pay anything until the guarantor has in some appropriate proceeding established its claim. A plan which destroys the claim altogether would be inequitable. We concur with the District Court in its finding,—"Nor do I see how else the Commission could have dealt with the Nickel Plate's peculiar position as a guarantor liable to bondholders and as a creditor of the debtor to the extent of its contingent loss under its indemnity agreement with the debtor." Any reasonable delay incident to the execution of this provision is offset by what seems to us to be its fairness to general creditors.

The order of the District Court is affirmed.[1]

[1] Judge Arant voted in conference to affirm the order of the District Court but died before the opinion was prepared.